IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

```
ROOSEVELT THOMAS, JR.,         :
AIS #115280                    :
    Plaintiff,                 :
                               :
vs.                            :       CIVIL ACTION 15-248-WS-M
                               :
CORIZON, INC., et. al,         :
    Defendant.                 :
                               :
```

REPORT AND RECOMMENDATION

This § 1983 action, filed by Roosevelt Thomas, Jr., an Alabama prison inmate, proceeding *pro se,* was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. GenLR 72, and is now before the Court on Plaintiff's Complaint, Amended Complaint, and Second Amended Complaint (Docs. 1, 5, 35-37), Defendants' Answers and Special Reports (Docs. 22, 23, 45, 46), which the Court has converted into a Motions for Summary Judgment (Docs. 34, 47), and to which Plaintiff has responded. (Docs. 25, 31, 35, 50). After consideration of the pleadings, Motions, and Responses, and for the reasons set out below, it is recommended that Defendants' Motions for Summary Judgment be granted and that Plaintiff's action be dismissed with prejudice.

1

I.   Facts and Proceedings

This action arises out of an incident on April 15, 2015, wherein Plaintiff was stabbed during a fight between two other inmates in the H-Dorm. (Doc. 1 at p. 4).  According to Plaintiff, prior to him being injured, Officer Barron was made aware of the altercation but did not intervene. (Doc. 35).  Plaintiff additionally claims he was injured "because of the narrow spacing where I sleep."  (Id). Lastly, Plaintiff complains that following the incident he was taken to the infirmary where "no alcohol pads, gauzes, bandaids, or the primary supplies used for treatment was available." (Id).  Plaintiff contends that he bled for two and a half hours and his high blood pressure skyrocketed. (Id).  The following morning, Plaintiff returned to the infirmary where he received stitches, but not pain medication.  (Id).  Plaintiff contends the incident was the result of a "lack of security/over-crowdness (sic)/and narrow bed spacing."  (Id).

According to Defendants, on April 15, 2015, at 12:55 a.m., Officer Barron, while working as the night rover, discovered an altercation between two inmates (not Plaintiff) in H-Dorm.  (Docs. 46-1, 46-2, 46-5).  Officer Barron called for assistance, but prior to assistance arriving, other inmates within H-Dorm stopped the

2

altercation. (Docs. 46-1, 46-2). Officers then detained the two inmates involved in the altercation and took them to the infirmary and then to segregation (Id). Immediately following the altercation, several weapons were found and confiscated from H-Dorm. (Id). At 2:30 a.m., approximately two hours after the altercation, Plaintiff arrived in the infirmary and stated to the nurse that "I hit my knee when I was tying to get out of the way of them fighting." (Doc. 23-1 at p. 9). Medical records show that Plaintiff was treated for a three to four inch[1] laceration on his right knee wherein the wound was cleaned and covered. (Doc. 23-1 at pp. 5-9). Plaintiff then returned to the infirmary the following day where he was seen by Dr. Kouns. (Id). Plaintiff's medical records from the day after his initial treatment indicate that Dr. Kouns examined and sutured Plaintiff's wound. (Id). There is no indication that Plaintiff made any complaints relating to his blood pressure on April 15, or April 16, 2015, or thereafter. (Id). According to Officer Barron's Affidavit, on the date of the incident, he did not know

---

[1] There is a disparity in the medical records relating to the size of Plaintiff's laceration. According to Defendant Strickland's notes, the wound was between 3" and 3½" (using the inch symbol, but not the word), and according to Dr. Kouns' notes the wound was approximately "4.0 cm". (Doc. 23-1 at pp. 5-9).

3

Plaintiff and was unaware of Plaintiff's alleged involvement in the altercation in H-Dorm. (Doc. 46-1).

Plaintiff has now brought this action against the Alabama Department of Corrections (ADOC), Lieutenant Davis, Officer Barron, Nurse Strickland, Ken Dover, and Corizon, Inc. (Corizon) asserting his Eighth Amendment rights were violated. For damages, Plaintiff request that Defendants "[r]eward me in money for my suffering and try and make things better for the treatment of the inmates as far as medical situations are concerned. (Doc. 1 at p. 7).

## SUMMARY JUDGMENT STANDARD

The Federal Rules of Civil Procedure grant this Court authority under Rule 56 to render "judgment as a matter of law" to the party who moves for summary judgment. FED.R.CIV.P. 56(a). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court must view the evidence produced by "the nonmoving party, and all factual inferences arising from it, in the light most favorable to" that party. *Barfield v. Brierton*, 883 F.2d 923, 934 (11th Cir. 1989). However, Rule 56(e) states that:

4

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
> (1) give an opportunity to properly support or address the fact;
> (2) consider the fact undisputed for purposes of the motion;
> (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or
> (4) issue any other appropriate order.

FED.R.CIV.P. 56(e). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. . . . If the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (internal citations omitted). "Summary judgment is mandated where a party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Custom Mfg. and Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 647 (11th Cir. 2007).

Also, it is well settled that a conclusion cannot be taken as true, and the Court will not accept conclusory allegations as facts in consideration of a motion for summary judgment. *Ashcroft v. Iqbal,* 556 U.S. 662, 678-79

5

(2009); *see also Leigh v. Warner Bros., Inc.,* 212 F.3d 1210, 1217 (11th Cir. 2000)("[t]his court has consistently held that conclusory allegations without specific supporting facts have no probative value"); *Fullman v. Graddick,* 739 F.2d 553, 556-57 (11th Cir. 1984)(a plaintiff's mere verification of conclusory allegations is not sufficient to oppose a motion for summary judgment).

### 42 U.S.C. § 1983 and the Eighth Amendment

Plaintiff's Complaint asserts that Defendants' actions subjected him to a substantial risk of serious harm, i.e., inmate-on-inmate assault and inadequate medical care, to which they were indifferent. This Court will address these two claims separately.

Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, … subjects, or causes to be subjected, any citizen of the United States … to the deprivation of any rights … secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983 (1994). Additionally, the Eighth Amendment provides that, "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

6

The Eighth Amendment's proscription against cruel and unusual punishment prohibits prison officials from exhibiting deliberate indifference to a substantial risk of serious harm to an inmate. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).

The Supreme Court summarized a state's constitutional responsibilities with regard to inmates as follows:

> [W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being . . . . The rationale for this principle is simple enough: when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs – *e.g.*, food, clothing, shelter, medical care, and reasonable safety – it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause.

*DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189 (1989)(citations omitted).

In order to prevail on his Eighth Amendment claims, Plaintiff must prove three elements: "(1) a condition of confinement that inflicted unnecessary pain or suffering, *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981) (citations omitted), (2) the defendant's 'deliberate indifference' to that condition, *Wilson v. Seiter*, 501 U.S. 294 (1991)

7

(citations omitted), and (3) causation, *Williams v. Bennett*, 689 F.2d 1370 (11th Cir. 1982) (citations omitted.)." *LaMarca v. Turner*, 995 F.2d 1526, 1535 (11th Cir. 1993).

In *Sims v. Mashburn*, 25 F.3d 980, 983 (11th Cir. 1994), the court described the first two elements as follows:

> An Eighth Amendment claim is said to have two components, an objective component, which inquires whether the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and a subjective component, which inquires whether the officials acted with a sufficiently culpable state of mind.

A prison official's duty under the Eighth Amendment is to ensure "reasonable safety," a "standard that incorporates due regard for prison officials' 'unenviable task of keeping dangerous men in safe custody under humane conditions.'" *Farmer*, 511 U.S. at 844-45 (citations omitted). "Whether one puts it in terms of duty or deliberate indifference, prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause." *Id.*

DISCUSSION

A. Nurse Strickland, Ken Dover, and Corizon

8

With regard to Defendants Strickland, Dover, and Corizon, Plaintiff has asserted an Eighth Amendment claim of failure to provide adequate medical care. To prevail on a claim for inadequate medical care, an inmate must show that the defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble,* 429 U.S. 97 (1976).

In order for Plaintiff to meet his burden on the objective component of the Eighth Amendment claims, Plaintiff must demonstrate that an "objectively serious medical need" exists. *Farrow v. West,* 320 F.3d 1235, 1243 (11th Cir. 2003). A serious medical need is "considered one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* (*citing Hill v. DeKalb Reg'l Youth Det. Ctr.,* 40 F.3d 1176, 1187 (11th Cir. 1994) overruled on other grounds in *Marsh v. Butler Cnty., Ala.,* 268 F.3d 1014, 1031 n. 8 (11th Cir. 2001)(quotation marks omitted)). "In either of these situations, the medical need must be one that, if left unattended, pos[es] a substantial risk of serious harm." *Id.* (citations and quotation marks omitted).

9

In order to meet the subjective requirement of an Eighth Amendment denial of medical care claim, Plaintiff must demonstrate "deliberate indifference" to a serious medical need.  *Farrow,* 320 F.3d at 1243.  "Deliberate indifference entails more than mere negligence.  *Estelle,* 429 U.S. at 106; *Farmer v. Brennan,* 511 U.S. 825, 835 (1994).  The Supreme Court held that a prison official cannot be found deliberately indifferent under the Eighth Amendment "unless the official *knows of* and *disregards an excessive risk to inmate health or safety;* the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer,* 511 U.S., 825, 837-38 (emphasis added).  However, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment."  *Id.* at 838.  Therefore, "under *Estelle* and *Farmer,* deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence."  *Farrow,* 320 F.3d 1235, 1246 (*citing McElligot,* 182 F.3d 1248, 1255)(stating that defendant must have subjective awareness of an "objectively serious need"

and that his response must constitute "an objectively insufficient response to that need")).

In the present action, it is undisputed that Plaintiff suffered a laceration to his right knee which was treated within approximately two hours of it occurring. (Docs. 23-1 at pp. 5-9; 25 at p. 2; 46-2). Further, Plaintiff's medical records detail Plaintiff's treatment by Defendant Strickland for his laceration which included cleaning and dressing Plaintiff's wound. (Doc. 23-1 at pp. 5-9). Plaintiff's exam also indicated a temperature of 98.0, pulse of 78, respirations of 16, blood pressure of 223/109, and an oxygen saturation of 98%. (Id). While Plaintiff has asserted that his blood pressure was "grave-dead" (Doc. 25 at p. 2) and could have resulted in a "stroke or massive heart attack" (Doc. 25, at p. 6), there is little medical evidence in his records, other than an elevated blood pressure reading when he was first seen by the nurse, to support such a claim. In fact, Plaintiff's claim that he was "in a daze and fell (sic) very lightheaded" (Doc 25 at p. 2) does not even appear in his medical record and there is no indication that Plaintiff informed anyone of these alleged symptoms or concerns.

Based on the medical records describing Plaintiff's laceration, this Court does not find that Plaintiff's

11

injury was an objectively serious medical need. Furthermore, to the extent that Plaintiff's inadequate medical care claim relies on his blood pressure (and not on his laceration), there is no evidence that Plaintiff's blood pressure amounted to a serious medical need as there is no objective medical evidence that it posed a substantial risk of serious harm.

Nevertheless, even if a serious medical need existed, Plaintiff has not shown that Defendant Strickland was deliberately indifferent to it.  To the contrary, it is undisputed that Plaintiff was seen within two hours of suffering a laceration and at that time, Plaintiff was examined, treated, and released.  It is additionally undisputed that Plaintiff was seen again the day after his injury for follow up care by Dr. Kouns, who again examined Plaintiff's wound and applied sutures to it.  Further, with respect to Plaintiff's blood pressure, the medical records are void of any facts which indicate that Plaintiff complained of his blood pressure to either Defendant Strickland or Dr. Kouns either at the time of his initial exam or on his follow up visit the next day.  (Doc. 23-1 at pp. 5-9).  While Plaintiff now asserts that he was dizzy and light-headed, there is no indication in the medical records of these complaints such that it could be inferred

12

that Defendant Strickland was aware of a medical need and indifferent to it. Lastly, to the extent that Defendant Strickland was aware of Plaintiff's blood pressure based on her exam on April 15, 2015, there is still a lack of factual support that she was indifferent because, as the records indicate, she arranged for Plaintiff to see Dr. Kouns the following day. (Doc. 23-1 at p. 3). These facts, simply fail to support that Defendant Strickland was deliberately indifferent to Plaintiff's medical needs or that the complained of two hour delay in care resulted in a deprivation of Plaintiff's rights.

The only complaints made against Defendants Dover and Corizon are based on Plaintiff's delay in medical care and the actions of Defendant Strickland, as detailed above. Thus, this Court interprets Plaintiff's claim against these Defendants as stemming from their supervisory position over Defendant Strickland and of the infirmary at the correctional facility. These claims are rooted in the theory of *respondeat superior* or vicarious liability.

> It is well established in this circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates "on the basis of respondeat superior or vicarious liability." *Belcher v. City of Foley,* 30 F.3d 1390, 1396 (11th Cir.1994) (citation and quotation omitted). "Supervisory liability [under § 1983] occurs either when the supervisor personally participates in the alleged

13

> constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation. The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so. The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *Brown v. Crawford,* 906 F.2d 667, 671 (11th Cir.1990) (citations omitted). In addition, the causal connection may be established and supervisory liability imposed where the supervisor's improper "custom or policy ... result[s] in deliberate indifference to constitutional rights." *Rivas v. Freeman,* 940 F.2d 1491, 1495 (11th Cir.1991) (citing *Zatler v. Wainwright,* 802 F.2d 397 (11th Cir.1986)).

*Hartley v. Parnell*, 193 F. 3d 1263, 1269 (11th Cir. 1999).

First, considering Plaintiff's claim with regard to Defendant Strickland's treatment of Plaintiff, this Court finds that Plaintiff has not shown that Defendant Strickland was liable.  Second, there is no evidence that Defendant Dover was directly involved with Plaintiff's treatment.  (See Docs. 23-1 at pp. 5-9; 23-2 generally). Lastly, Plaintiff has failed to assert, much less, establish any causal connection between Defendant Dover or Corizon and his alleged constitutional deprivations, i.e. that they were the result of a policy or procedure such that a causal connection could ostensibly be made.

14

As a result, Defendants Strickland, Dover, and Corizon are entitled to summary judgment.

B. Defendants Barron, Davis, and the ADOC

Plaintiff contends that Defendant Barron failed to secure H-Dorm, i.e., protect and/or intervene in the altercation that led to Plaintiff being injured. (Doc. 35). Plaintiff also contends that his injuries were the result of overcrowding and lack of spacing between the beds in H-Dorm. (Doc. 1 at p. 4). Lastly, Plaintiff contends that Defendant Davis failed to properly investigate the cause of the altercation in H-Dorm, including watching the video surveillance of the altercation. (Doc. 35 at p. 2).

In order for Plaintiff to meet his burden on the objective element of his failure to protect claim, Plaintiff must establish that the conditions under which he was incarcerated presented "a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. "[A]n excessive risk of inmate-on-inmate violence at a jail creates a substantial risk of serious harm . . . . And confinement in a prison where violence and terror reign is actionable." *Purcell ex rel. Estate of Morgan v. Toombs County, Ga.*, 400 F.3d 1313, 1320 (11th Cir. 2005). However, "occasional, isolated attacks by one prisoner on another may not constitute cruel and unusual punishment." *Id.* Moreover, a "prison

15

custodian is not the guarantor of a prisoner's safety." *Id.* at 1321 (citations omitted).  Thus, "not . . . every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety."  *Farmer*, 511 U.S. at 834.

In the present case, Plaintiff has not alleged that he was exposed to a constant threat of inmate-on-inmate violence, *see Purcell,* 400 F.3d at 1320, or to any other condition that presented a substantial risk of serious harm.  *Farmer,* 511 U.S. at 834; *see also Hale v. Tallapoosa Cnty.,* 50 F.3d 1579, 1583 (11th Cir. 1995).  Instead, Plaintiff has only asserted that he was injured as a result of an isolated altercation between two other inmates. Plaintiff has not offered any evidence that the altercation between the two inmates was warned of or anticipated in any manner. Furthermore, Plaintiff has failed to provide any factual support that his injuries could have or should have been anticipated by Defendant Barron as a result of an altercation that did not involve him. Lastly, Defendant Barron has indicated that he does not know Plaintiff and has no knowledge of his involvement in the altercation between the two other inmates.  (Doc. 46-1).  Based on these facts, no conclusion can be reached that the

16

conditions of Plaintiff's incarceration amount to an objective finding of a substantial risk of serious harm.[2]

Plaintiff next asserts that Defendant Davis failed to adequately investigate[3] the cause of the altercation which resulted in Plaintiff's injury, most notably by failing to review video footage. (Doc. 35). Regardless of Plaintiff's assertion to the contrary, records show that Officer Davis did, in fact, investigate the subject altercation. Specifically, after being notified of the altercation, Lieutenant Davis notified the security supervisor of the event and created an incident report detailing the occurrence. (Doc. 46-5). Lieutenant Davis has additionally explained that he did not have access to

---

[2] Because Plaintiff's claim fails to satisfy the objective element, this Court need not address the subjective component of Plaintiff's claim. Nevertheless, in reviewing the relevant pleadings, this Court notes that Plaintiff's factual assertions fail to show that Defendant Barron was deliberately indifferent to the risk of serious harm to Plaintiff. Specifically, there are no facts to show that Defendant Barron was aware that an altercation may occur prior to it occurring or that Plaintiff would have been injured as a result of an incident between two other prisoners. Additionally, Plaintiff has not shown that Defendant Barron's actions were unreasonable in waiting for assistance before entering a dorm to stop an altercation where weapons were being used.

[3] Plaintiff also asserts that Defendant Davis (and ostensibly the ADOC) is liable for failure to protect/intervene because of their supervisory role over Defendant Barron. However, as discussed previously herein, there is no vicarious liability for § 1983 claims unless the supervisor was directly involved or a causal connection between the supervisor and the alleged constitutional deprivation. *See Hartley v. Parnell*, 193 F. 3d 1263, 1269 (11th Cir. 1999). First, this Court has found that Defendant Barron's actions do not warrant liability. Second, in the present case, there is no dispute that Defendant Davis was not involved in the altercation that led to Plaintiff's injuries and, lastly, Plaintiff has wholly failed to establish that his alleged injuries were causally related to a policy, practice, etc., of Defendants Davis or the ADOC such that supervisory liability would be proper.

17

the video footage of the incident.  (Doc. 46-2).  Based on these facts, Plaintiff has failed to show that Defendant Davis violated a clearly established constitutional right.[4]

Lastly, Plaintiff's contention that the spacing of beds in H-Dorm led to his injuries also fails to show a prison condition that presents a substantial risk of serious harm.  Plaintiff has not provided any facts relating to the spacing between the beds including, but not limited to, the size of H-Dorm, the number of beds, the size of the beds, the space between the beds, the amount of space that should have existed, etc., and Plaintiff's explanation as to the cause of his injuries i.e., "I hit knee when I was trying to get out of the way of them fighting"[5] offers no insight such that this Court could conclude that there were too many beds or a lack of spacing between the beds in H-Dorm. Furthermore, even if Plaintiff had established that the spacing of the beds was objectively dangerous, he still failed to show that Defendants were deliberately indifferent as there is no indication that any complaints were made to Defendants.

---

[4] While an analysis is unnecessary, it should be noted that Plaintiff's claims relating to the investigation conducted by Defendant Davis would, likewise, fail pursuant to the PLRA, based on the minimal nature of Plaintiff's injury, i.e., a single laceration.  *See* 42 U.S.C.A. 1997e(e) .

[5] This Court is aware of Plaintiff's contention that he was stabbed during the altercation.  However, regardless of whether Plaintiff struck his knee or was stabbed, the analysis hereinabove will not change.

18

As a result, there is no question of material fact as to whether Defendants Barron, Davis, or the ADOC objectively subjected Plaintiff to a substantial risk of serious harm, either by failing to intervene and/or protect, failing to investigate, or based on the placement of the beds in H-Dorm and the Court finds that Defendants' Motion for Summary Judgment is due to be granted.[6]

## Conclusion

There is no question of material fact from which a jury could reasonably find that Plaintiff was subjected to a substantial risk of serious harm, of which Defendants were subjectively aware and deliberately indifferent, or that Defendants' conduct caused the deprivation of Plaintiff's constitutional rights.  As a result, it is recommended that Defendants' Motions for Summary Judgment be granted and this action be dismissed with prejudice.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the

---

[6] Because this Court has determined that Plaintiff has failed to establish a violation of a constitutional right, it is unnecessary to address the merits of the defenses raised by Defendants, including whether they have qualified immunity.

Clerk of this Court. See 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D. ALA. GenLR 72(c)(2). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."  11th Cir. R. 3-1.  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

    DONE this 8th day of March, 2016.

                            s/ BERT W. MILLING, JR
                            UNITED STATES MAGISTRATE JUDGE